## Nevin *v.* Bank of Elizabeth, Appellant.

Argued May 3, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William S. Doty,* and with him *Charles Henry Fleming* and *Thomas A. Thornton* of *Doty and Thornton,* for appellant.

*Robert E. Anderson,* and with him *Thomas E. Findley* and *John B. McBride,* for appellee.

OPINION BY CUNNINGHAM, J., October 3, 1934:

The action below was assumpsit by James M. Nevin, Esq., a member of the bar of Allegheny County, against the State Bank of Elizabeth, a former client, to recover $1,338.49 for professional services; the bank defended against the entire amount of the claim and set up a counter-claim against plaintiff in the sum of $519.68, for which amount it asked a certificate. The trial resulted in a verdict in favor of plaintiff for $1,397.74, subsequently reduced by stipulation to $1,088.39; defendant's motion for a new trial was denied and it now appeals from the judgment entered upon the verdict.

The death of plaintiff occurred subsequent to the trial and his executrix, Norma Nevin, was substituted as plaintiff.

The professional services for which compensation was claimed were rendered in connection with the foreclosure by plaintiff of two mortgages held by the bank; one was against the property of Willard H. Weigel and in the penal sum of $28,000; the other upon a property of William E. Carothers and Ella May Carothers, his wife, for the penal sum of $30,000; the real estate covered by each was bid in at the sheriff's sale by plaintiff, for the bank, for costs and taxes. In each case plaintiff entered judgment upon the bond secured by the mortgage and issued the necessary writs.

At the time of the sale of the Weigel property the real debt amounted approximately to $15,486 and in

his original statement plaintiff claimed an attorney's commission of five per cent upon this amount, or $774.33; by amendment to the statement, this amount was claimed as "a fair and reasonable compensation for the services rendered." The real debt on the Carothers mortgage was $11,183 and, in like manner, plaintiff claimed $559.16 for its foreclosure. An additional item of $5, for interest upon costs alleged to have been advanced, need not be taken into consideration. It will be conducive to clearness to consider separately the circumstances surrounding each of these foreclosures.

1. With respect to the Weigel foreclosure, it appears of record that plaintiff was both president of the defendant bank and its solicitor when the proceedings were conducted. The bank defended against the payment of his claim of $774.33, for the professional services rendered by him in connection with this foreclosure upon two grounds:

(a) It was averred in the bank's amended answer that on February 11, 1927, more than a year before these proceedings, plaintiff's salary, as president and attorney, had been increased from $600 to $2,500, per annum, under an oral agreement between him and the bank that in consideration of this increased salary he would render, without further compensation, the professional services incident to the collection of the various loans of the bank; and that plaintiff was therefore not entitled to any compensation, in addition to his salary, for his services in connection with this foreclosure.

(b) The further defense was made that Weigel, the mortgagor, upon several occasions prior to the institution of the foreclosure proceedings made the proposition to plaintiff that he would deed the property covered by the mortgage to the bank; that plaintiff,

"in violation of his duty to his client in the premises," rejected this offer and proceeded with the sheriff's sale in order to be in a position to claim his attorney's commission; and that the bank was compelled to expend the sum of $100.64, as costs of the foreclosure proceedings, although the object of the sale could have been attained by the acceptance of Weigel's offer. These costs were the first item in the counter-claim. Plaintiff's reply was that the property was also encumbered by a judgment in favor of a third party for more than $1,500, which it was necessary to divest by a sheriff's sale in order to give the bank a clear title. At the trial it was contended by the bank that plaintiff had no knowledge of the existence of this judgment when he refused the offer of the mortgagor and failed to communicate it to his client.

The jury separated its verdict into two items; upon this Weigel item it awarded the plaintiff the entire amount of his claim, i.e. $774.33 with interest from March 15, 1928, ($174.22) or a total of $948.55.

There was testimony both ways on the issues of fact connected with this foreclosure, viz., whether the increased salary of plaintiff covered such services as were here rendered, and whether Weigel had distinctly offered to make a deed to the bank in order to avoid the foreclosure. In our opinion, the testimony justified the learned trial judge, SOFFEL, J., in submitting those issues to the jury; the verdict demonstrates that they were resolved in favor of the plaintiff. As there was evidence sufficient, if believed, to sustain the finding, the motion for a new trial was properly denied as to this item. This also disposes of the item of $100.64 in the bank's counter-claim. We here state however that, for reasons hereinafter detailed, this amount of $948.55 is subject, in our opinion, to a deduction in favor of the defendant bank in the sum of $490.

2. We turn now to the item of $559.16 claimed by plaintiff for professional services in foreclosing the mortgage owned by the bank upon a portion of the Carothers real estate. For reasons already given, we eliminate the contention of the bank that the increase in plaintiff's salary was intended to cover these services. An additional defense, however, was interposed by the bank to the payment of this particular item. That defense was, in brief, that plaintiff, in violation of his professional obligations as attorney for the bank in this proceeding (he was no longer its president), so manipulated, for his personal advantage, the item for taxes involved in this sheriff's sale that his client was obliged to pay out $419.04 more than it should have been required, or was legally liable, to pay. This was the second item in its counter-claim.

There was evidence upon the part of the defendant of these facts. In addition to the Carothers real estate upon which the bank held a mortgage, they owned five other properties in the same township; upon three of these, plaintiff had liens of his own and subsequently instituted foreclosure proceedings which resulted in the acquisition by him of these properties.

When the sheriff's office was preparing for the sale of that portion of the Carothers real estate covered by the bank's mortgage and the question of the amount of taxes to be included in the calculation of the amount which would have to be bid to cover taxes and costs arose, plaintiff not only failed to secure a proper allocation of the taxes as between the real estate covered by the bank's mortgage and the other real estate of the mortgagors, but directed the tax collector of the township "to turn in all taxes against the Carothers property." As a result, the total amount of taxes included in the calculation was $1,249.96. Only $830.92 of this amount was assessed against the property cov-

ered by the bank's mortgage and then up for sale. The difference of $419.04 represented taxes assessed against other property of the Carothers, some of which was subsequently purchased by the plaintiff on his own foreclosure proceedings.

The fact that the bank was not informed of the true situation, and was misled into paying $419.04 more for taxes than it would have paid if plaintiff had properly performed his duty to his client, was not denied by him at the trial. His attempted explanation with respect to the alleged difficulties incident to making a proper apportionment was not convincing. Nor did the stipulation at the trial to the effect that the taxes upon the properties subsequently bought in by plaintiff amounted to only $151.91 affect the merits of the contention of the bank. The question at issue here did not relate to the exact amount of plaintiff's personal profit from the transaction, but to the amount lost by his client through not merely his failure to secure an allocation of the taxes, but more particularly his significant instructions to the collector, and the effect of such conduct upon his right to claim any compensation for this foreclosure proceeding.

In the clear and comprehensive charge of the trial judge the jury was correctly instructed with respect to the nature of the confidential relationship existing between plaintiff and his client and with relation to his obligation to act with the utmost good faith and integrity. Excerpts from the charge read: "In transactions between counsel and client no shadow of anything like deception or unfair dealing upon the part of an attorney can be countenanced. ...... Owing to the confidence bestowed upon him, the attorney is presumed to be able to strongly influence his client. Hence, the law often declares transactions between them void, which between other persons would be unobjection-

able. Unless the transaction and the course of dealing is fair and conscionable, it is to be deemed a constructive fraud."

After referring to the evidence upon each side of this issue, the trial judge said: "If the plaintiff, Mr. Nevin, failed to secure the apportionment of taxes that under the law he should have secured and his client paid a sum which was not its debt, then there could be no compensation to the plaintiff for his services, because he would have acted without the fidelity that the law demands of the relationship of attorney and client."

As stated, plaintiff's claim on this item was $559.16 with interest amounting to $41.94, or a total of $601.10. The jury deducted the item of $151.91, without interest, from this amount and, as the second item in its verdict, made an award to plaintiff of $449.19 for this item. Subsequently, an additional deduction of $309.35 (the difference in round numbers between the tax item of $419 and the deduction of $150 made by the jury, or $269, together with $40.35 interest thereon) was made by stipulation of counsel.

3. The net result was an award to plaintiff of $948.55 upon the Weigel item and of $139.84 upon the Carothers item, or a total of $1,088.39, for which amount judgment was entered in favor of the substituted plaintiff.

In our opinion, a verdict, awarding plaintiff compensation, in any amount, for the Carothers foreclosure and failing to charge against the $948.55 awarded for the Weigel foreclosure the amount of taxes unjustly collected from defendant, is so clearly against the substantially uncontroverted evidence and against the charge as to require a retrial.

Upon inquiry, we were advised at bar by counsel for plaintiff that if we should conclude defendant was

entitled to a new trial, the personal representative of the plaintiff would rather have the judgment reduced than retry the case. For the reasons stated, it is our conclusion that the original plaintiff was not entitled to any compensation upon the Carothers item, and, by reason of the manner in which he conducted that foreclosure proceeding, became indebted to the defendant bank in the sum of $419.04, with interest thereon from January 8, 1931, to date of verdict, or a total of $490. The judgment must therefore be reduced to $458.55—the balance which remains after deducting from the award of $948.55, the $490 to which defendant became entitled as a result of the Carothers foreclosure.

The judgment for $1,088.39, entered in favor of the plaintiff on March 19, 1934, is reduced to $458.55, as of that date, and as so modified is affirmed.